OPINION OF THE COURT
Kenneth L. Gartner, J.
It has been long established that statements compelled from public employees under threat of loss of their employment are inadmissible in criminal proceedings, as “involuntary” within the meaning of the Constitution.
It has similarly been long established that this constitutional protection is unavailable to private employees, since private employers, when making such a threat, are not acting as an arm of the State.
Apparently for this reason, this court has not found any prior case applying to private employees the constitutional protection against the use of statements compelled by threatened job loss. However, because Criminal Procedure Law § 60.45 (2) statutorily extends the same protection to private employees that the Constitution provides to public employees, this court now determines that a hearing must be held in the instant case to determine whether a statement given by the defendant to store detectives retained by the defendant’s private employer was compelled by a prohibited threat.
Defendant seeks suppression of two statements made by the defendant.
The defendant is charged with having participated with others in a criminal scheme to steal from his then-employer, Lowes Department Store. The defendant gave the first statement sought to be suppressed prior to his arrest, while being interrogated by private detectives retained by Lowes.
Months later the defendant was stopped for alleged Vehicle and Traffic Law violations, and a computer check turned up two open warrants. One was for the larceny charge. The other was for an unrelated matter relative to a domestic incident (which has since been disposed of). The defendant was arrested, given Miranda warnings, and questioned regarding the domestic incident. Several hours went by. The defendant was then questioned again, regarding the larceny charge. He at that time gave the second statement.
The defendant argues that the first statement should be suppressed because it was involuntary, having been given under *229 threat of termination from employment. The People respond that the applicable constitutional protections are inapplicable to private individuals, such as store detectives in the employ of a private employer, and that in any event the defendant’s factual assertions are not true.
The defendant argues that the second statement should be suppressed because Miranda warnings were not administered prior to the questioning regarding the larceny charge. The People respond that the warnings initially administered suffice.
With respect to the first statement, the United States Supreme Court held, in Garrity v New Jersey (385 US 493, 497-498 [1967]), “[t]he choice given petitioners was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or remain silent . . . [T]he statements were infected by the coercion inherent in this scheme of questioning and cannot be sustained as voluntary under our prior decisions.” (Accord, Lefkowitz v Turley, 414 US 70, 85 [1973] [“(A)nswers elicited upon the threat of the loss of employment are compelled and inadmissible in evidence”].)
In People v Auant (33 NY2d 265, 271 [1973]), the Court of Appeals therefore held that “the State may compel any person enjoying a public trust to account for his activities and may terminate his services if he refuses to answer relevant questions, or furnishes information indicating that he is no longer entitled to public confidence. But testimony compelled in this manner, under threat of loss of public employment, may not be used as a basis for subsequent prosecution.” (Citations omitted; accord, Matter of Matt v Larocca, 71 NY2d 154, 159 [1987]; Matter of City of New York v Uniformed Fire Officers Assn., 263 AD2d 3, 8 [1st Dept 1999], affd 95 NY2d 273 [2000]; Seabrook v Johnson, 173 Misc 2d 15, 19 [Sup Ct, Bronx County 1997].)
However, while this is the rule involving public employees, since the “employer” is the government, and its actions therefore constitute state action, the United States Constitution does not mandate exclusion of an involuntary confession made to a private party. (See, People v Sorbo, 170 Misc 2d 390, 393 [Sup Ct, NY County 1996], citing Colorado v Connelly, 479 US 157 [1986].) “The general rule is that private conduct — no matter how abhorrent — does not render evidence inadmissible in subsequent civil or criminal proceedings. (People v Ray, 65 NY2d 282 [1985].)” (People v Padilla, 154 Misc 2d 594, 595-596 [Crim Ct, NY County 1992].) “The purely private acts of private *230 citizens do not implicate the Fourth, Fifth or Sixth Amendments, all of which were meant to regulate government activity.” (Padilla, supra, 154 Misc 2d at 596 n 1 [internal quotation marks omitted].) “Public employees thus retain their individual rights against the government employer, even though private employees possess no similar rights against their employers.” (Developments in the Law — Public Employment, The Constitutional Rights of Public Employees, 97 Harv L Rev 1738, 1746 [1984].)
But while the Constitution may not protect private employees, the New York State Legislature has protected them. “The Legislature has created a limited exception to this rule in CPL 60.45.” (Padilla, supra, 154 Misc 2d at 596.)
CPL 60.45 (i) provides that a statement by a defendant “may not be received in evidence against him in a criminal proceeding if such statement was involuntarily made.” CPL 60.45 (2) (a) provides that a statement is “involuntarily made” if it is obtained “[6]y any person by the use of . . . improper conduct or undue pressure which . . . undermin[ed] his ability to make a choice whether or not to make a statement” (emphasis added).
In People v Grillo (176 AD2d 346 [2d Dept 1991]), the defendant was therefore held entitled to a hearing to determine the voluntariness of a statement he claimed had been physically beaten and coerced out of him by the complaining witness and a relative. As held in People v Pagan (211 AD2d 532, 533-534 [1st Dept 1995], lv denied 85 NY2d 978 [1995]), “[i]t is of no moment that the person to whom the statement is made is not a police officer since a statement may be involuntary even if made to a private individual.” The provisions of CPL 60.45 apply to private as well as public actors. (Padilla, supra, 154 Misc 2d at 595; see also, People v Sorbo, 170 Misc 2d 390 [1996], supra; People v Lanquetot, 104 Misc 2d 179 [Sup Ct, NY County 1980].)
Determination of whether under the facts at bar CPL 60.45 would require suppression will require a hearing. (See, e.g., People v Reed, 247 AD2d 900, 900 [4th Dept 1998], lv denied 92 NY2d 859 [1998] [suppression not required where defendant, accused of petit larceny from her public employer, was told during investigation of theft that if she did not cooperate it would shed light on her likely role, because this was “not the type of explicit or implicit threat that serves to immunize defendant’s subsequent responses to questioning”]; People v Marchetta, 177 Misc 2d 701, 709 [Crim Ct, Queens County 1998] [suppression *231 not required where defendant was told by his public employer that he “must” cooperate, but was “never informed that he would be dismissed or experience any definite job-related sanction if he refused”].)
The hearing will take place immediately prior to the trial of this matter.
With respect to the second statement, the fact that it resulted from questioning about a crime other than the one which was raised immediately following the giving of the Miranda warnings does not alone require suppression. The Appellate Division, in People v Lopez (116 AD2d 592, 592 [2d Dept 1986]), held that “[t]here is no merit to defendant’s contention that the police were required to readminister the Miranda warnings before expanding the scope of the continuing interrogation to encompass another crime.” (Accord, People v Rolland, 180 Misc 2d 729, 734-735 [Sup Ct, NY County 1999].)
The gap in time also does not alone require suppression. There is no requirement that Miranda warnings be repeated as long as the questioning takes place within a reasonable time after the warnings were given, and there has been no break in custody. (People v Vasquez, 183 AD2d 864 [2d Dept 1992]; see, People v Parker, NYLJ, June 3, 1991, at 29, col 6 [Sup Ct, Bronx County].) Intervals of up to 12 hours — much longer than was involved here — have been held to have been reasonable. (See, People v Zappulla, 282 AD2d 696, 697 [2d Dept 2001], lv denied 96 NY2d 909 [2001]; compare, Zappulla, supra, 282 AD2d at 698 [24-hour interval, and fact that “second interrogation concerned a crime unrelated to that for which (the defendant) was initially arrested,” made it error for the hearing court to fail to suppress the statement].)
The “totality of the circumstances” is to be considered, “including the duration and conditions of detention, the attitude of the police toward the defendant, and the age, physical state and mental state of the defendant.” (People v Baker, 208 AD2d 758, 758-759 [2d Dept 1994], lv denied 85 NY2d 905 [1995].)
A hearing on the defendant’s request to suppress the second statement is therefore also directed, also to take place immediately prior to the trial of this matter.
*232 Also to be potentially considered at the hearing will be whether the second statement is alternatively required to be suppressed pursuant to CPL 710.20 (4) as the “fruits” of the first statement, if the first statement is in fact shown to be involuntary. (See, Sorbo, supra, 170 Misc 2d at 395.)